IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REED BLACK, Individually and on   *
Behalf of All Others Similarly
Situated                          *

            Plaintiff            *

        vs.                      * CIVIL ACTION NO. MJG-05-1224
                                   (Consolidated with MJG-05-1257,
                                 *  05-1309, 05-1354, 05-1508,
                                    05-1514 and 05-1556)
MARTEK BIOSCIENCES CORPORATION, *
et al.
                                 *
            Defendants
*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER

The Court has before it Defendants'[1] Motion to Dismiss the

Consolidated Amended Class Action Complaint [Paper 40], and the

materials submitted by the parties related thereto.  The Court

has held a hearing and had the benefit of arguments by counsel.


I.   BACKGROUND[2]

Martek Biosciences Corporation ("Martek") was founded in

1985 as a developer of products derived from microalgae.  Among

other things,  Martek developed natural oils which promote brain

---

[1]  Defendants are Martek Biosciences Corporation ("Martek");
Henry Linsert, Jr. ("Linsert"), Martek's Chairman and Chief
Executive Officer ("CEO"); and Peter Buzy ("Buzy"), Martek's
Chief Financial Officer ("CFO") and Treasurer.  Linsert and Buzy
are the "Individual Defendants."

[2]   The "facts" are stated as alleged by Plaintiffs.

and eye development in infants and thus, are used in infant formula.

Infant formulas containing Martek's oils were first placed on the U.S. market in February 2002.  During the times relevant hereto, Martek had four primary customers who purchased 90% of Martek's oils.  These customers were Mead Johnson Nutritionals, the Ross Products Division of Abbott Laboratories, Nestle, and PBM Products.  The demand from Martek's customers was greater than its production capacity and, as a result, Martek had to "ration" its product to customers.  Therefore, the primary customers could not be certain that they could obtain the product whenever needed.  As a result, the customers ordered more than was immediately needed to build up a "safety stock" of inventory as a hedge against Martek's production capacity limitations.

The Martek products were shipped in expensive (some $10,000 each) containers called "shippers" that were expected to be unloaded by customers and returned to Martek for reuse.  Martek had a system in place to track the location of each shipper.  Customers buying safety stock would often keep a portion of their safety stock in the shippers.  Accordingly, Martek was, or should have been, aware that customers were retaining shippers.  This behavior should have indicated to Martek that a substantial

portion of the shipped products were being stockpiled and not being used in the ordinary course of the customers' business.

Martek did not disclose the stockpiling situation and thus did not provide investors information that would have indicated that Martek's reported increase in sales was, in substantial part, due to stockpiling rather than a continuing increase in demand.

Investors first learned about Martek customers' stockpiling during an investor conference call on March 9, 2005.  In another such conference call on April 28, 2005, Martek's Chief Executive officer acknowledged that Martek had been aware of the stockpiling since at least the prior quarter, yet had failed to disclose that fact to investors.  On April 28, 2005, after this disclosure, the price of Martek stock dropped 45.9%.

Plaintiffs have brought the instant class action lawsuit on behalf of those who purchased Martek common stock during the period December 9, 2004 through and including April 28, 2005 (the "Class Period").

Plaintiffs' Amended Complaint alleges that Martek violated section 11 of the 1933 Securities Act[3] by incorporating by reference an untrue statement of a material fact or omission in the company's Prospectus Supplement.  Plaintiffs further contend

---

[3]   15 U.S.C. § 77k.

that Martek and its executives violated section 10(b) of the 1934 Exchange Act[4] by failing to reveal to investors that Martek's customers had been building up safety stock.  Plaintiffs further assert derivative liability under a "control person" theory[5] against Martek's Chairman and CEO (Linsert) and Martek's CFO and Treasurer (Buzy).

Defendants seek dismissal on the ground that Plaintiffs have failed to state any claim upon which relief can be granted.


II.   <u>DISMISSAL STANDARD</u>

The Court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  "The question is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the Complaint states any valid claim for relief."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 336 (2d ed. 1987).  The Court, when deciding a motion to dismiss, must consider well-pled allegations in a

---

[4]  15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

[5]  Plaintiffs alleged control person liability under section 15 of the Securities Act, 15 U.S.C. § 770, and section 20 of the Exchange Act, 15 U.S.C. § 78t(a).

complaint as true and must construe those allegations in favor of the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969).  The Court must further disregard the contrary allegations of the opposing party.  See A.S. Abell Co. v. Chell, 412 F.2d 712, 715 (4th Cir. 1969).

III. DISCUSSION

   A.   Section 11 of the 1933 Act

   To establish a claim under section 11 of the 1933 Act, Plaintiffs must prove that offering documents filed with the SEC "contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading...."  15 U.S.C. §77k(a).  Scienter is not an element of a Section 11 claim.

   Plaintiffs' Section 11 cause of action is based upon a specific statement in the Martek Annual Report[6] which was incorporated by reference into Martek's January 21, 2005 Prospectus Supplement ("the Supplement").  Plaintiffs assert that the Supplement "[c]ontains selected consolidated financial statements from the company for historical period ending

---

   [6]  Form 10-K, for the fiscal year ended October 31, 2004, as amended on January 21, 2005.

October 31, 2004, stating that the company's revenues and products sales were $170 million, total revenues, including other manufacturing sales revenues, was $184 million, as well as the net income figure for 2004 of $47 million."  Tr. 20[7]

Plaintiffs allege that this statement is misleading because the document presents the income increase as due to sales to customers purchasing in the ordinary course of business and not as a "one shot" need to accumulate safety stock.  Plaintiffs estimate the amount of sales due to stockpiling to be about $90 million.  Tr. 21.  While this estimate may be on the high side, the Court cannot conclude that the amount of Martek sales due to stockpiling were not material.  Moreover, the statement Plaintiffs assert is untrue was a statement of historical fact, that is the amount of sales[8] made during a period prior to the time of the statement.

Defendants contend that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) is applicable to Plaintiffs' Section 11 claim in the instant case because the gist of the

---

[7]     Transcript references are to the transcript of the motion hearing of May 22, 2006.

[8]     Bear in mind that, on Plaintiffs' theory, the statement would be read by an investor to constitute the false statement that all sales were made to customers purchasing for use in the ordinary course of their business.  Defendants, of course, deny that the statement is false or misleading in any material respect.

Plaintiffs' claim is fraud.  There appears to be an open question as to whether, even in such a circumstance, Rule 9(b) would be applicable.  Compare Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288-89 (3rd Cir. 1992)(holding that Rule 9(b) applies to 1933 Act claims grounded in fraud) with In re NationsMart Corp. Sec. Litig., 130 F.3d F.3d 309, 315 (8th Cir. 1997)(declining to apply the Rule 9(b) standard to claims brought under §§ 11 and 12(2) of the Securities Act of 1933).

The United States Court of Appeals for the Fourth Circuit has not yet addressed the issue.  This Court concludes that the Fourth Circuit will not apply the Rule 9(b) standard to the pleading of Section 11 claims.  Moreover, even if it did so, it would not likely require particularized pleading with regard to allegations of fraud when the existence of fraud is not an element of the Section 11 claim.

To the extent that there could be any need for particularity in pleading the Section 11 claim, the requirement was met in the instant case in that Plaintiffs have specifically identified the statements and alleged a basis for claiming that the statements relied upon were untrue.

The Court will not dismiss the Section 11 claim against Martek or the derivative claims against the Individual Defendants.

B.    <u>Section 10(b) of the 1934 Act</u>

1.    <u>Martek</u>

To establish a claim for a violation of section 10(b) of the 1934 Act and Rule 10b-5 Plaintiffs must prove that:  "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages."  <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 613 (4th Cir. 1999) (citing <u>Hillson Partners Ltd. P'ship v. Adage, Inc.</u>, 42 F.3d 204, 208 (4th Cir. 1994)).  There is no dispute as to the adequacy of Plaintiffs' pleading of elements three and four.  Therefore, the Court will discuss only the first two elements: false statement or omission and scienter.

The heightened pleading standards contained in the Private Securities Litigation Reform Act ("PSLRA")[9] and Federal Rule of Civil Procedure 9(b) apply to the Plaintiffs' 10(b) claim.[10]  The PSLRA requires "heightened standards of claim pleading, above and beyond the simple factual statement otherwise required by Civil

---

[9]   15 U.S.C. §§ 78u, 77z-2.

[10]   The heightened pleading standards of the PSLRA apply to "any private right of action arising under this title," which include those brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act ("1934 Act").  <u>See</u> 15 U.S.C. §§ 78u-4 (b)(1) & (b)(2).  Rule 9(b), which requires that fraud be pleaded with particularity, also applies to Plaintiffs' 10(b) claim because it is grounded in fraud.  <u>See</u> <u>Hillson</u>, 42 F.3d at 209.

Rule 8....”  In re Manugistics Group, Inc. Sec. Litig., 1999 WL 1209509, at *1 (D. Md. Aug. 6, 1999).  Rule 9(b) requires that “[i]n all averments of fraud..., the circumstances constituting fraud...shall be stated with particularity.”  These circumstances “include ‘the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.’” PPM Am., Inc. v. Marriott Corp., 820 F. Supp. 970, 973 (D. Md. 1993)(citing Windsor Assocs., Inc. v. Greenfeld, 564 F. Supp. 273, 280 (D. Md. 1983)).

The Plaintiffs have adequately identified the alleged false statements or omissions of material fact on which the claim is based.  Plaintiffs sue upon the following allegedly false statements of historical fact:

- December 9, 2004 Press Release: Martek announced “record fourth quarter and fiscal year 2004 results, including revenues of $59.7 million for the fourth quarter of 2004, an increase of 54% over the $38.6 million from the fourth quarter of 2003, as well as revenues of $184.5 million for the year ended October 31, 2004, up 61% from the $114.7 million in revenues from the previous year.”  Amended Compl. at ¶ 48.  Tr. 37-38.

- The same figures stated in paragraph 1 repeated in

  - An investor Conference Call, ¶¶ 58 and 60.

  - Martek’s Form 10 K for the year-end filed with the SEC on January 13, 2005.  Tr. 38.

- Defendants' representation in the January 21, 2005 Prospectus Supplement that "[p]roduct sales increased by $58.3 million or 52% in fiscal 2004 as compared to fiscal 2003, primarily due to a continued increase in sales of our oils to both existing and new infant formula licensees." Amended Compl. at ¶ 99. Tr. 39-40.

- Defendants' presentation of Martek's revenue during the Class Period not presented in accordance with GAAP and SEC reporting requirements. Amended Compl. at ¶¶ 94-98. Tr. 41.

Plaintiffs further base claims upon allegedly false forward-looking statements including:

- Buzy's statements regarding projected revenue in a December 9, 2004 conference call. During the call he stated that "[t]he range [Martek] gave was $290 to $310 million. We have an excellent visibility on that level of range so it's primarily our core business." Buzy also stated that he thought Martek was "currently being conservative in connection with [its] guidance for the year. There is upside in connection with new deals. The guidance includes basically kind of our core business." Amended Compl. at ¶ 59. Tr. 42.

- Linsert's comment on the revenue growth in a December 9, 2004 press release, stating that "[t]his growth is expected to continue throughout 2005 as the Kingstree facility expands production and demand grows from existing and new products." Amended Compl. at ¶ 52. Tr. 42.

- Buzy's statement during the March 9, 2005 investor conference call that "[w]e are now in a production level of approximately between $280 and $300 million of annual product sales, and with this additional capacity we are on track to reach our annual capacity goals of near half a billion dollars or $500 million in the second half of the year." Amended Compl. at ¶ 80. Tr. 42.

- Linsert's statement during the March 9, 2005 investor conference call that they were "more optimistic about Martek's future over the next twelve to eighteen months" than at any time since he had been at the Company.  He also stated that demand "looks great right now, it could be phenomenal."  Amended Compl. at ¶ 81. Tr. 42.

- A March 9, 2005 press release declaring "that with its expansion, the Company expected to have production capacity equivalent to approximately $500 million in annualized sales by the second half of fiscal 2005, which was an indicator of increasing revenues." Amended Compl. at ¶ 75.  Tr. 42.

The PSLRA provides that a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  With respect to the statements of historical fact, Plaintiffs must allege either a conscious or reckless[11] effort to defraud shareholders.

With regard to forward-looking statements, Plaintiffs must plead that the Defendants had actual knowledge of the falsity in order to avoid the safe harbor provision of the PSLRA.[12]

---

[11]  Recklessness is defined as an act so highly unreasonable and such an extreme departure from the standard of ordinary care where the defendant either knew of the danger of misleading the plaintiff or the "danger was so obvious that the defendant must have been aware of it."  Phillips v. LCI Int'l, Inc., 190 F.3d 609, 621 (4th Cir. 1999).

[12]  Under the PSLRA safe harbor provision, forward-looking statements are protected unless the Plaintiff can establish: (1) that the statements were made with actual knowledge of their falsity or (2) that the statements were not accompanied by cautionary language.  15 U.S.C. §§ 78u-5(c)(1), 77z-2(c)(1).

11

The specific allegations Plaintiffs rely upon to support a finding of scienter include:

- Statements by Martek's former employees[13] that Martek management knew that a material amount of sales to customers were for stockpiling[14] rather than for ongoing use.

- Buzy's admission that Martek had been aware that customers were building safety stock before disclosing this fact.[15]

- Martek's centralized management system indicating that it was aware of the situation.

- The fact that Martek had only four primary customers.[16]

---

[13] Confidential witnesses must be described in the complaint "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000). Each witness statement is pled with the requisite particularity as each witness's position with the Company, location and duration of employment, as well as the basis for his or her knowledge were alleged. Moreover, the witnesses' interlocking and corroborating accounts add support to the reliability of the statements. See, e.g., In re Cabletron Sys., Inc., 311 F.3d 11, 30 (1st Cir. 2002) ("consistent accounts reinforce one another and undermine any argument that the complaint relies unduly on the stories of just one or two former employees").

[14] Plaintiffs have alleged that both Martek's Plant Manager and its Logistic Manger acknowledged that customers "weren't sending [the shippers] back because they were storing them." Amended Compl. at ¶ 43.

[15] Plaintiffs further refer to Buzy's April 28, 2005 statement in an investor conference call that Martek "became aware...about – probably about a quarter ago that some of [its] customers had build some level of safety stock, only recently became aware of the size of this safety stock. It was larger than believed." Amended Compl. at ¶ 90.

[16] Plaintiffs also plead a motive to make false statements on the part of the Individual Defendants. The Court does not find, however, any pleading of a motive that would indicate any

12

The Court concludes that Plaintiff's allegations collectively are sufficient to raise a strong inference that Defendants had actual knowledge that their projections lacked a reasonable basis and that Defendants either knew or recklessly disregarded the falsity of their statements of present fact.  See In re Cable & Wireless, PLC, 321 F. Supp. 2d 749, 761 (E.D. Va. 2004) ("[C]ourts should not restrict their scienter inquiry by focusing on specific categories of facts, such as those relating to motive and opportunity, but instead should examine all of the allegations in each case to determine whether they collectively establish a strong inference of scienter.").

Plaintiffs' Section 10(b) claims against Martek will not be dismissed.

### 2.   Individual Defendants

The Plaintiffs allege that the Individual Defendants, Mr. Linsert and Mr. Buzy, are liable directly under § 10(b) of the

---

particular reason for the Defendants to have made mistatements. In fact, at least as presently appears, Plaintiffs do not present anything to indicate that the Defendants had any particular reason to mislead investors.  They did not, insofar as now appears, obtain any material benefit from the alleged price increase during the Class Period or the abrupt decline in stock price.  Hence, on the current state of the record the issue of motive may tend to indicate the absence, rather than the presence, of scienter.

1934 Act and as control persons under § 20(a) of the 1934 Act and § 15 of the 1933 Act.

As discussed previously, Plaintiffs have adequately alleged that the Individual Defendants made false statements of historical fact as well as false forward-looking statements.  <u>See infra</u> 9-11 (detailing the precise statements made by each Individual Defendant).  Further, Plaintiff's collective allegations are sufficient to raise a strong inference that the Individual Defendants had the requisite scienter.  <u>See infra</u> 12-13 (listing the allegations giving rise to an inference of scienter).  Accordingly, Plaintiffs' Section 10(b) claim against the Individual Defendants will not be dismissed.

To establish a claim under § 20(a), Plaintiffs must allege (1) control by the Individual Defendants (2) over a primary violator of § 10(b).[17]  <u>In re Royal Ahold N.V. Sec. & ERISA</u>

---

[17]  Section 20(a) of the Exchange Act provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

14

<u>Litig.</u>, 351 F. Supp. 2d 334, 407 (D. Md. 2004).  <u>See also</u> <u>In re</u>
<u>Microstrategy, Inc. Sec. Litig.</u>, 115 F. Supp. 2d 620, 661 (E.D.
Va. 2000).  "Section 15 provides similar liability in
relationship to § 11... violations."  <u>Royal Ahold</u>, 351 F. Supp.
2d at 407.  A prima facie Section 15 claim requires the
Plaintiffs to establish (1) control and (2) an underlying
violation of Section 11.[18]  <u>In re Initial Public Offering Sec.</u>
<u>Litig.</u>, 241 F. Supp. 2d 281, 352 (S.D.N.Y. 2003).

    With respect to both control person claims, Plaintiffs are
"not required to allege 'culpable participation' beyond the facts
of control and the underlying violation by the controlled person
in order to state a claim."  <u>Royal Ahold</u>, 351 F. Supp. 2d at 408.
Rather, Plaintiffs are only required to plead in accordance with
Rule 8.  <u>Id</u>.  <u>See also</u> <u>In re WorldCom, Inc. Sec. Litig.</u>, 294 F.

---

[18]  Section 15 of the Securities Act states:

> Every person who, by or through stock
> ownership, agency, or otherwise, or who,
> pursuant to or in connection with an
> agreement or understanding with one or more
> other persons by or through stock ownership,
> agency, or otherwise, controls any person
> liable under [section 11], shall also be
> liable jointly and severally with and to the
> same extent as such controlled person to any
> person to whom such controlled person is
> liable, unless the controlling person had no
> knowledge of or reasonable ground to believe
> in the existence of the facts by reason of
> which the liability of the controlled person
> is alleged to exist.

15 U.S.C. § 77o.

Supp. 2d 392, 415 (S.D.N.Y. 2003)(stating "the extent to which the control must be alleged will be governed by Rule 8's pleading standard"); In re Initial Public Offering, 241 F. Supp. 2d at 354 ("Section 15 claims need only be pleaded under Rule 8; a defendant is only entitled to notice that she allegedly controlled an entity that violated Section 11"); id. at 396 ("Section 20(a) must [] be pleaded only in accordance with Rule 8(a).  Neither the PSLRA (because scienter is not an essential element), nor Rule 9(b)(because fraud is not an essential element), apply to a Section 20(a) claim").

"Control" in both Section 20 and Section 15 means "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. §§ 240.12b-2.  Under this definition of control, a Plaintiff need only pleading facts demonstrating that the controlling defendant "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws...[and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." Microstrategy, 115 F. Supp. 2d at 661 (quoting Brown v. Enstar Group, Inc., 84 F.3d 393, 396 (11th Cir. 1998).  "Furthermore,

16

determining whether an individual is a control person presents a complex factual question, and as such, it is not ordinarily subject to resolution on a motion to dismiss, dismissal is appropriate only when a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person." Royal Ahold, 351 F. Supp. 2d at 409 (internal citations and quotations omitted).

Plaintiffs have alleged that:

- Mr. Linsert, Martek's CEO, and Mr. Buzy, Martek's CFO, signed materially false and misleading documents filed by Martek with the SEC during the Class Period. Amended Compl. at ¶¶ 27, 28.

- "The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Martek's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each Defendant was provided with copies of the Company's reports and press released alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected." Id. at ¶ 29.

The Individual Defendants were the primary spokespersons for Martek, evidenced by their numerous public statements, and the stated Martek business model is a single management team reporting directly to the CEO. Pls.' Opp'n at 42-43.

Accordingly, Plaintiffs' Amended Complaint satisfies the pleading standard under Rule 8 and adequately alleges that the

17

Individual Defendants were control persons.  Inasmuch as the Individual Defendants have been alleged to be control persons of Martek, the entity that allegedly violated § 10(b) and § 11, Plaintiffs have adequately pleaded control person claims against Linsert and Buzy pursuant to Section 20 of the 1934 Act and Section 15 of the 1933 Act.

IV.    CONCLUSION

For the foregoing reasons:

1.    Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint [Paper 40] is DENIED.

2.    The case shall proceed pursuant to the Scheduling Order being issued herewith.

SO ORDERED this Wednesday, June 14, 2006.


                                    /s/
                              Marvin J. Garbis
                        United States District Judge